## Millers' National Insurance Company v. Jackson County Milling and Elevator Company.

1. INSURANCE— *Waiver of Proof of Loss.*—An insurance company may waive imperfections and deficiencies in the statement and proof of loss required by it, and all objections to such proof of loss not specifically pointed out will be considered as waived.

2. SAME—*When the Insured is Relieved from Furnishing Proofs of Loss.*—If an insurance company, after notice of loss, refuses to pay, and places its refusal on the distinct ground of some non-liability, other than the failure to furnish sufficient proof of loss, the assured is relieved from the obligation to furnish such proof.

3. SAME—*Agreements Which Do Not Affect the Question of Waiver.*— An agreement between the insured and an adjuster of the company, in which it is provided that he shall proceed to adjust the loss, but that nothing which he had said or done, or might say or do, should be held to be a waiver of any of the terms or conditions of policy, does not affect the question of the waiver of proofs of loss, for the reason that the agreement simply provides against a waiver arising from the words or acts of the adjuster.

4. SAME—*Application for—May be Contradicted by Parol.*—If an applicant for insurance did not make the representations written in the application by the agent of the company, the falsity of such written statement may be shown by parol.

5. PRACTICE—*Asserting Different Theories in the Appellate Court.*—A party litigant can not make up the issues in a case, permit evidence to be introduced responsive to such issues, and ask instructions upon a certain theory, and then assert for the first time in the Appellate Court that such theory is erroneous.

6. SAME—*Shifting Position in the Appellate Court.*—Where a party

objects to the introduction of evidence on cross-examination on the express ground that it is incompetent, he will not be permitted in the Appellate Court to shift his position and say that the evidence was not proper as cross-examination.

7. RES GESTÆ—*Applications for Insurance.*—What takes place at the time of making an application for the insurance in litigation, is proper evidence as a part of the history of the transaction.

**Assumpsit,** on a policy of insurance. Appeal from the Circuit Court of Jackson County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1895. Affirmed. Opinion filed August 31, 1895.

MYRON H. BEACH and JOHN M. HERBERT, attorneys for appellant.

HILL & MARTIN and R. J. STEPHENS, attorneys for appellee, contended that if an insurance company, after notice of a loss, refuses to pay, and places refusal on a distinct ground of non-liability, other than preliminary proofs, the assured is relieved from furnishing such proofs. Home Ins. Co. v. Bethel, 42 Ill. App. 480; 142 Ill. 537; Peoria M. & F. Co. v. Whitehill, 25 Ill. 466; Williamsburg City Fire Ins. Co. v. Cary, 83 Ill. 453; German Fire Ins. Co. v. Gueck, 130 Ill. 345; Phoenix Ins. Co. v. Tucker, 92 Ill. 64; Lycoming Fire Ins. Co. v. Densmore, 75 Ill. 15.

The courts of this State have uniformly held, that if the applicant did not make the representations that the agent of the insurer wrote in the application, the falsity of such written statements may always be shown by parol evidence. Hartford Ins. Co. v. Gray, 80 Ill. 28; Union Ins. Co. v. Chipp, 93 Ill. 96; German Ins. Co. v. Miller, 29 Ill. App. 633.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

1. In the first division of appellant's brief it is argued that there can be no recovery because proper proof of loss was not furnished appellant within sixty days after the destruction of appellee's property by fire. Authorities are

226    Appellate Courts of Illinois.

Vol. 60.] Millers' Nat. Ins. Co. v. Jackson County Milling Co.

cited to show that the furnishing of such preliminary proof within the specified time is a condition precedent to a recovery under the policy. This well settled principle will not be denied by any one conversant with insurance law. There are certain qualifications of the rule, however, which prevent the application of it to this case.

The fire occurred on March 15, 1894, and appellee, by its manager, B. R. Neal, notified appellant of the loss immediately thereafter. During the following week William B. French was sent to Murphysboro, where the mill had been located, to adjust the loss under the policy sued on in this case, and under policies of two other insurance companies. As soon as he learned that a watchman had not been kept on the premises at night, he denied the liability of appellant and refused to proceed further until an agreement on the question of waiver had been executed by the proper officer of appellee. In this agreement Mr. French calls himself the adjuster of the insurance company. The agreement provides that he shall proceed to adjust the loss, but that nothing which he has said or done, or may say or do, shall be held to be a waiver of any of the terms or conditions of the policies; also that the agreement "shall not determine, waive or invalidate any other right or rights of either party" thereto.

Mr. French spent some time in estimating the loss, adjusted the loss under one of the policies in the Millers' Mutual Fire Insurance Company of Illinois, and returned to Chicago, reaching there on the 23d of March, whereupon, as he swears, his right to represent appellant as agent in this matter terminated.

The testimony of Mr. Neal, which is uncontradicted in all important points, becomes material in this connection. We quote from appellant's abstract as follows: " I made out the proofs of loss and sent them to Mr. French, or to the company; this copy marked Exhibit D is a copy of the statement; I swore to the original statement before R. J. Stephens, as notary; the total amount of loss on stock as adjusted by Mr. French was $4,438; I received no reply by

mail or otherwise; about the expiration of the sixty days after the fire, I called on the company and met Mr. Barnum, its secretary, and Mr. Horton; Mr. Barnum said I had not sent in the proofs of loss; I told him that I had; he said I might call it a proof of loss, but it was not; I sent the original of this statement within a few days after receiving a letter from Mr. French, I think on April 2, 1894; $28,000 was the total value of the property destroyed by the fire, described in this policy, including the stock; after Mr. Barnum told me that was not proof of loss, I showed a willingness to made out proof of loss and asked him if he had any blanks; he said they had to be made on regular blanks; he said that he would help me make it out, but he could not do it under the law; he said I would have to take the blanks and make it out and put down every item; I got several of them and then I went to Indianapolis, and there I got prices of all the machinery; when I got home I made out proof of loss and forwarded it to the company; I forwarded it by registered mail, and this card marked "Exhibit E" is the return card."

On March 26th, French wrote to Neal as follows: "Col. Barnum is not at home, neither will he be here for some time to come; whenever he returns I will lay before him your case and see what can be done for you; in the meantime please have your builder make an estimate, in detail, of the buildings, and mail it to me as you promised you would do."

The jury might well conclude from the evidence in the record that Neal had the right at this time to consider French as appellant's agent in the adjustment of this claim. French swears that he was employed by appellant to go to Murphysboro and adjust the loss under this policy, and that he generally adjusted appellant's losses, though he was not its regular salaried adjuster. This is not very material, however, for it appears from Neal's testimony above quoted that the first proof of loss reached appellant either directly, or through French, within sixty days after the loss, and that, in a conversation between Neal and appellant's secretary, just after the sixty days had expired, the latter spoke of the

228    APPELLATE COURTS OF ILLINOIS.

VOL. 60.] Millers' Nat. Ins. Co. v. Jackson County Milling Co.

proof of loss, and waived any question as to the time within which a corrected proof of loss could be furnished by telling appellee how to make out the corrected proof. Moreover, no objection that the first proof of loss was insufficient was made within the sixty days allowed for furnishing such proof. The second proof of loss was sent to appellant by registered letter on May 18th, and appellant received and receipted therefor.

On June 25, 1894, appellant's secretary wrote to appellee a letter in which he made no objection to the proof of loss, or to the time within which the same had been furnished, but in which he based his refusal to pay the policy on the ground that no watchman had been kept on the premises when the mill was not in operation. The statement in this letter that "for the above and other reasons" the company denies all liability, should not be construed to include any reasons except those specified.

Upon the trial appellee offered in evidence a copy of the first proof of loss, and appellant objected on the ground that the copy was not the best evidence, and the court held that the copy was inadmissible unless it was shown that appellant had been notified to produce the original. With the foregoing facts in mind, a brief statement of the law will be profitable.

An insurance company may waive imperfections and deficiencies in the statement and proof of loss required by the company; and all objections not specifically pointed out will be considered as waived. Peoria Marine and Fire Insurance Company v. Lewis et al., 18 Ill. 553; Winnesheik Insurance Co. v. Schueller, 60 Id. 465; Pennell v. Lamar Insurance Company et al., 73 Id. 303; Phoenix Insurance Company v. Tucker, 92 Id. 64.

If an insurance company, after a notice of loss, refuses to pay, and places its refusal on the distinct ground of non-liability, other than the failure to furnish sufficient proof of loss, the assured is relieved from the obligation to furnish such proof. Peoria Marine and Fire Insurance Company v. Whitehill, 25 Ill. 466; Lycoming Fire Insurance Company

v. Dunmore, 75 Id. 14; German Fire Insurance Company v. Gueck et al., 130 Id. 345; Home Insurance Company of New York v. Bethel et al., 142 Id. 537.

In 2 May on Insurance, Sec. 472, it is said: "In Hincken v. Mutual Benefit Life Insurance Company (50 N. Y. 657), a question arose as to the amount of evidence necessary to sustain a verdict in favor of the insured upon the allegation of having furnished the required preliminary proof. And it was held that when at the trial a witness testified that he had delivered the preliminary proofs within the required time, but nothing further appears as to what they were, except that they then were in possession of the insurers, and that no objection had been made known, this was evidence that the preliminary proofs were in accordance with the requirements of the policy, and sufficient to sustain the verdict."

When the law, as thus laid down, is applied to the facts of this case, it clearly appears that any defect or insufficiency of the first proof of loss was waived by appellant, by not presenting specific objections thereto within the time allowed for furnishing proof; that the obligation to furnish proof was wholly done away with when appellant placed its refusal to pay, solely on the ground of its non-liability in any event because of the failure to keep a watchman in the building; also that parol testimony, showing that proof of loss was forwarded, was sufficient under the circumstances of this case without the production of the original statement which was in the custody of the insurer.

The agreement relating to waiver does not affect this case for the reason that this agreement simply provides against a waiver arising from the words or acts of French in determining the loss, or from the fact that such an agreement has been made, and these may be disregarded and the waiver yet stand as a fact established by sufficient evidence.

2. The second, third and sixth points presented in appellant's argument relate to the same matter, and may be considered together.

In the application for insurance, which is made a part of

230 APPELLATE COURTS OF ILLINOIS.

VOL. 60.] Millers' Nat. Ins. Co. v. Jackson County Milling Co.

the policy by express agreement, the word "Yes" appears as an answer to the question, "Do you agree to keep a watchman on the premises at all times when (the mill is) not in operation?" It is an undisputed fact that the mill was burned at night, when it was not in operation, and that there was no watchman on the premises that night, or at any other time when the mill was closed for the night.

The court permitted appellee to show that the answers in the application were written by the insurance agent who was acting for appellant in that behalf; that appellee signed the application without reading it; that appellee, in answering the question, said "No," and that the agent wrote "Yes" instead of "No."

It is not asserted that Dinsley, the insurance agent, was not the agent of appellant. In fact Dinsley swears that he was "in the employ" of appellant at the time, and went to Murphysboro to solicit insurance on the new mill. But it is urged that parol evidence showing that appellant's agent wrote "Yes," when he should have written "No," is inadmissible, in view of the well settled rule of law that a written contract can not be varied by parol. This evidence was admissible under the issues joined on the rejoinder to the third replication to the second plea. The second plea set forth the application for insurance, and averred that appellee had violated its agreement to keep a watchman on the premises when the mill was not in operation. The third replication to this plea alleged that appellee's agent solicited the insurance and filled out the application, propounding to appellee's manager the questions and writing down his answers; that the manager said "No," in answering the question with reference to keeping a watchman at the mill, and that appellant's agent fraudulently wrote "Yes," as the answer to this question. Appellant waived its demurrer to this question by rejoining and traversing the allegations of the replication. It thus appears that the evidence now objected to was responsive to the issues and properly admitted. A careful examination of appellant's abstract shows that no objection was interposed to this evidence and that no in-

struction was asked by appellant taking the view of the law now contended for. Appellant can not make up the issues, permit evidence to be introduced, and ask instructions on one theory, and then assert here, for the first time, that this theory is erroneous.

Moreover, the law is that if the applicant did not make the representation written in the application by the agent of the insurer, the falsity of such written statement may be shown by parol. Among the cases directly or indirectly sustaining this proposition are the following : Andes Insurance Company v. Fish, 71 Ill. 620; Hartford Life and Annuity Insurance Company v. Gray et al., 80 Id. 28, and 91 Id. 159; Union Insurance Company v. Chipp, 93 Id. 96; Germania Fire Insurance Company v. McKee, 94 Id. 494; Massachusetts Mutual Life Insurance Company v. Robinson, 98 Id. 324.

3. The policy sued on in this case covered three classes of property: $3,500 on the mill building, $2,500 on the mill machinery, and $1,500 on the stock. There was insurance in two other companies to an aggregate amount of $10,000. The total value of the property destroyed was $28,000. The verdict was for $7,328.48. Now it is said by appellant that, for aught appearing to the contrary, the whole loss may have been on the building, in which case no more than $3,500 could be recovered, or on the building and machinery, in which case no more than $6,000 could be recovered; or if the stock was damaged at all, the damage may have been slight, or there may have been salvage upon one or all of the items sufficient to reduce the loss below the amount of the verdict.

The evidence shows that " $28,000 was the total value of the property *destroyed by fire* described in this policy, including the stock;" that " the property described in this policy was *burned* the 15th of March," and that French and Neal " went out and looked at the *ruins*," when French was at Murphysboro, for the purpose of adjusting the loss. No evidence was offered to show that the loss was not total; no claim of that kind was made at any time by appellant,

232     APPELLATE COURTS OF ILLINOIS.

VOL. 60.] Millers' Nat. Ins. Co. v. Jackson County Milling Co.

either by letter or otherwise. The jury were justified in finding that the property described in the policy was totally destroyed.

The further discussion of this point is purely a matter of figures.

The total insurance on buildings, machinery and stock in the three companies was $17,500. The total insurance on stock was $5,000; $2,500 of the policy sued on was on the machinery. Hence the total insurance on the building could not have been more than $10,000. But the total loss on the building was $28,000, less $12,000, the loss on machinery and less the further sum of $4,438, the adjuster's estimate of the loss on stock. The total loss on the building being more than the total amount of insurance on the building, appellant was liable for $3,500, the whole of the insurance on the building under this policy.

The total insurance on machinery could not have been more than $9,000, which is ascertained by deducting the total insurance on stock ($5,000), and that part of the policy in suit which applies to the building ($3,500), from the total insurance of $17,500. The total loss on machinery, $12,000, being more than the total insurance on machinery, appellant is liable in this suit for the whole of that item in this policy which applies to machinery.

The total loss on stock is $4,438. The policy sued on provides that appellant shall not be liable for a greater proportion of any loss than the amount insured by the policy shall bear to the whole insurance covering the property. The ratio of 1,500, the figures representing the insurance on stock under this policy, to 5,000, the figures representing the whole insurance on stock, are 30 to 100. Thirty per cent of $4,438 is $1,331.40.

Therefore a verdict for $7,331.40 (that is $3,500 plus $2,500 plus $1,331.40) would have been justified by the evidence; whereas the verdict was for nearly $3 less than that amount.

4. It is alleged that the court erroneously permitted counsel for appellee to cross-examine the witness, Dinsley, concerning matters upon which he had not been questioned

in the direct examination. Every objection made during the cross-examination of this witnesss was upon the express ground of incompetency, irrelevancy or immateriality, and appellant will not be permitted to shift its position now and say that the questions were not proper as cross-examination.

It is also said that the court erred in permitting Dinsley to be examined concerning applications made by appellee's manager for insurance in other companies than the appellant in this case. The only objection of this kind apparent from the abstract was interposed to a question as to whether or not Dinsley wrote an application on behalf of appellee to the Millers' Mutual Insurance Company of Illinois. The application itself was afterward admitted in evidence without objection. There was no harmful error in this ruling.

Nor did the court err in permitting Neal to testify in rebuttal, that applications for insurance in the Millers' Mutual Insurance Company of Illinois, and the Millers' Mutual Insurance Company of Indiana, were written by Dinsley at the same time when the application pertaining to the policy sued on was written. This was a part of the history of the transaction, and the jury had the right to know what took place at the time when the application directly involved in this suit was written and signed. The argument that this evidence was offered for the purpose of showing to the jury that the Millers' Mutual Insurance Company of Illinois had paid its policies to appellee, is without foundation. This evidence does not show such payment. The fact is that there was such evidence, but that the same was admitted without objection, as far as the abstract, which is conclusive on appellant, gives any information on the subject.

No objection has been made in appellant's argument to the rulings of the court in the charge to the jury, and for this reason we do not feel called upon to consider the instructions.

The judgment is affirmed.